FILED

2026 Aug-12  AM 09:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

**MITCHELL MORGAN, *et al.*,**
    Plaintiffs,

**v.**

**COUNTRY MUTUAL
INSURANCE COMPANY, *et al.*,**
    Defendants.

**Case No. 4:25-cv-1499-CLM**

## <u>MEMORANDUM OPINION</u>

Mitchell and Kaitlin Morgan sued Country Mutual Insurance Company and one of its employees, Charles Whitlock, in the Circuit Court of Marshall County, Alabama. Country Mutual removed the case here. (Doc. 1). After Country Mutual removed the case, Whitlock moved to (1) set aside the state court's order of default against him (docs. 4, 6) and (2) to dismiss the Morgans' claim against him (docs. 5, 7). The Morgans move to remand (Doc. 9). For the reasons below, the court **GRANTS** the Morgans' motion and **REMANDS** this case to state court. Given this order, the court **TERMINATES** Whitlock's motions **AS MOOT**.

## BACKGROUND

### A.    Factual Background

The Morgans raise chickens. To ensure their chicken houses[1] would be protected in the case of a natural disaster or other incident, the Morgans purchased an "Agriplus Insurance Policy" (the "Policy") from Country Mutual. (*See* doc. 1-1, p. 2). That Policy became effective on March 15, 2024, and the Policy's term ran for one year.

On August 2, 2024, a windstorm damaged the roofs of the chicken houses and caused some of their walls "to lean." (*Id.*, p. 3). Because the Policy covers windstorm damage and offers replacement costs, the Morgans submitted a claim to Country Mutual. Country Mutual assigned

---

[1] Technically, the Morgans' chicken houses are "poultry boiler houses." (*See* doc. 1-1, p. 3).

one of its employees, Charles Whitlock, to handle the Morgans' claim. According to the Morgans, Whitlock "has a long history of working with various insurance companies to deny in various ways windstorm claims made by poultry farmers in Alabama," and Whitlock "use[s] engineers to assist with the denials." (*Id.*, p. 4).

Before Whitlock inspected the Morgans' chicken houses, the Morgans enlisted the chicken houses' manufacturer, CAGC, LLC, and a different firm, Kamo Construction, to examine the damage. The Morgans say that, upon inspection, CAGC and Kamo determined that each of the roofs and damaged lathing needed to be replaced.

On August 30, 2024, Whitlock inspected the chicken houses. According to the Morgans, Whitlock never inspected the roofs during his visit, but he still believed they did not need to be replaced. Before leaving the Morgans' farm, Whitlock told Mr. Morgan that Country Mutual "would get an engineer to look at the reported damage to see what needed to be done." (*Id.*, p. 5).

Whitlock then retained Robert Whelan to inspect the Morgans' chicken houses. Whelan conducted his inspection on September 12, 2024, and found, among other things, that the windstorm did not damage the roofs. Whelan also provided his opinions on how to best repair the damage he did find. A few weeks later, Whitlock provided Mr. Morgan a copy of Whelan's report.

On October 31, Whitlock and Mr. Morgan had two phone conversations. During the first call, Morgan inquired about the status of the claim, and Whitlock said that "he was working on an estimate, but the repairs would be based upon the repair recommendation" provided by Whelan. (*Id.*, p. 6). Morgan challenged Whelan's findings, Whitlock became upset, and the call ended. Whitlock later called Mr. Morgan and apologized. Whitlock then told Mr. Morgan "to see if maybe an engineer disagreed with Whelan's assessment." (*Id.* at 7).

On November 15, Whitlock met with Mr. Morgan. He provided Mr. Morgan an estimate for the property damage, a check for the damage, and a check for lost income. The Country Mutual estimate outlined the net

claim at $27,881.16. The Morgans disagreed with the sum based on the information they received from CAGC and Kamo. But Whitlock insisted that he had to follow Whelan's recommendations. Whitlock then "went on to present to [Mr. Morgan] that if [he] hired an engineer that concluded the repairs had to be done in the manner previously represented by [CAGC and Kamo] that Country Mutual **would pay** the repair costs recommended[.]" (*Id.*) (emphasis added).

Based on Whitlock's representation, Mr. Morgan hired an outside engineer, Michael Hodges. On December 5, the Morgans paid Hodges $400 to inspect the houses and provide a report. Like CAGC and Kamo, Hodges recommended that the Morgans replace the chicken houses' roofs and damaged lathing. On February 3, 2025, Mr. Morgan provided Whitlock copies of Hodges' report, CAGC's estimate, and Kamo's estimate. CAGC estimated the total damage at $394,840.00 and Kamo estimated it at $425,480.00.

Despite Whitlock's assurance that Country Mutual "would pay" the repair costs estimated by CAGC and Kamo if an outside engineer confirmed them, Country Mutual refused to revise its $27,881.16 estimate.

## B.    Claims and Procedural History

The Morgans sued Country Mutual and Whitlock in the Circuit Court of Marshall County on July 24, 2025. The Morgans bring three claims, which the court outlines below:

- **Count 1: Breach of Contract**. The Morgans allege that Country Mutual breached the Policy "by offering substantially less than the amount needed to make proper repairs to the damaged structures." (*Id.*, p. 9).
- **Count 2: Bad Faith**. The Morgans claim that Country Mutual engaged in bad faith by, among other things, failing to properly investigate the damage to the chicken houses and by relying on Whelan's report. (*Id.*, p. 10).
- **Count 3: Fraud**. The Morgans bring this claim against Country Mutual and Whitlock. The Morgans allege that Whitlock, as

3

Country Mutual's agent, engaged in fraud by assuring Mr. Morgan that Country Mutual "would pay" the CAGC and Kamo estimates if the Morgans retained an outside engineer to confirm them. According to the Morgans, they relied on Whitlock's representation when they paid Hodges $400 to inspect the chicken houses and provide a report. The Morgans contend that Whitlock "never intended to honor" his promise. (*Id.*, pp. 11-12).

The Morgans served Whitlock on July 27, 2025, and Country Mutual on August 5, 2025. Defendants retained the same counsel. But because Defendants' counsel homed in on Country Mutual's deadline to respond to the complaint (September 4), he neglected Whitlock's deadline (August 26) and failed to timely respond on Whitlock's behalf. (*See* doc. 4, pp. 1-2). So when Whitlock failed to respond in time, the Morgans filed an application for entry of default against Whitlock in state court. The Marshall County Clerk's Office entered default against Whitlock on August 27, and the trial court entered an Order for Default against Whitlock the next day.

On September 4, 2025, Country Mutual removed the case here. That same day, Whitlock moved to (1) set aside the state court's default order and (2) dismiss the fraud claim. (*See* docs. 4-7).

Country Mutual based its removal on diversity jurisdiction under 28 U.S.C. § 1332. Country Mutual is a resident-citizen of Illinois, and the Morgans are resident-citizens of Alabama. So they're diverse. But because Whitlock is a resident-citizen of Alabama, his presence in this case destroys complete diversity. To get around this, Country Mutual asserted in its removal notice that Whitlock's citizenship should be disregarded because he was fraudulently joined. (*See* doc. 1, pp. 7-14).

The Morgans move to remand. (Doc. 9). While the Morgans concede that they are diverse from Country Mutual and the amount in controversy exceeds $75,000, the Morgans contend that Whitlock was not fraudulently joined. The motion is fully briefed.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only the power authorized by the Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). For removal to be proper, the federal court must have subject matter jurisdiction over the case. "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987). Any doubts regarding removal should be resolved in favor of remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012).

When determining whether to remand a case, district court must evaluate facts in a light most favorable to plaintiff along with uncertainties of state law. *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). In the fraudulent joinder context, courts use a procedure like summary judgment. *Id.* To prevent needless litigation—when a party obtains judgment in federal court to later be invalidated due lack of jurisdiction—the court must strictly enforce the removal statutes. *Id.* To prove fraudulent joinder, a defendant must prove either (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006).[2] The defendant must make this showing by clear and convincing evidence. *Id.*

---

[2] This court has expressed concern that the Eleventh Circuit's "no possibility of recovery" standard strays from the Supreme Court's standard for fraudulent joinder removal. *See Alred v. Preferred Compounding Corp.*, 2020 WL 429486, at *3 (N.D. Ala. Jan. 28, 2020); *see also Lee v. Harris McKay Co.*, 2026 WL 580174, at *3-4 (N.D. Ala. Mar. 2, 2026). Those concerns persist. But because the Eleventh Circuit's "no possibility of recovery" standard remains binding, this court must apply it.

## DISCUSSION

Applying the Eleventh Circuit's fraudulent joinder standard, the court must answer one question: Is there *any* possibility that a state court would find that the Morgans' complaint pleads a viable fraud claim against Whitlock? If the answer is yes, the court must remand because the Morgans did not fraudulently join Whitlock. If the answer is no, then the court can exercise diversity jurisdiction by ignoring Whitlock.

The Morgans plead one count against Whitlock for fraud. Under Alabama law, the Morgans must show that Whitlock made "(1) a false representation (2) of a material existing fact (3) reasonably relied upon by [the Morgans] (4) who suffered damage as a proximate consequence of the misrepresentation." *See Brickhouse Cap., LLC v. Coastal Cryo AL, LLC*, 393 So. 3d 467, 473 (Ala. 2023) (quoting *Exxon Mobil Corp. v. Ala. Dep't of Conservation & Nat. Res.*, 985 So. 2d 1093, 1114 (Ala. 2007)) (emphasis omitted). The Alabama Supreme Court has explained that the proximate cause element requires a plaintiff show that "he took a different course of action [than he otherwise would have] because of the misrepresentation." *See Hunt v. Petroleum Corp. v. State*, 901 So. 2d 1, 5 (Ala. 2004).

According to the Morgans, Whitlock knowingly made a material and false representation on November 15, 2024, when he told Mr. Morgan that Country Mutual "would pay" the CAGC and Kamo estimates if the Morgans retained an outside engineer to confirm them. (*See* doc. 1-1, pp. 10-11). And the Morgans say that they relied on Whitlock's false representation when they paid Hodges $400 to inspect the chicken houses.

Country Mutual argues that the Morgans' fraud claim against Whitlock must fail because (a) the Morgans did not alter their course of conduct based on Whitlock's representation and (b) even if they did, they did not do so to their detriment. The court handles each argument in turn.

## A.    Changed Course of Conduct

According to Country Mutual, the Morgans didn't change their course of conduct because they planned to hire an outside engineer to inspect the chicken houses before Whitlock made the representation to

Mr. Morgan on November 15, 2024. Country Mutual offers some evidence to support its argument. First, Country Mutual points to a Facebook post made by Mr. Morgan on October 31, 2024, in which he asks his followers for information about a structural engineer who could inspect the chicken houses. (*See* doc. 11-1, p. 1). Next, Country Mutual offers two communications involving Mr. Morgan. The first is an email exchange on October 31, 2024, where Whitlock asks Mr. Morgan to "provide [him] with a copy of the report from the engineer [Mr. Morgan] contacted." (*See* doc. 11-4, p. 1). The second is a text exchange between a Country Mutual agent, Frank Scott, and Mr. Morgan on November 4, 2024. In that exchange, Scott asks Mr. Morgan whether he "had anything back from [his] engineer yet?" (*See* doc. 11-5, p. 21). Lastly, Country Mutual points to Whitlock's internal logs for the Morgans' claims. On October 31, 2024, Whitlock wrote in the log that Mr. Morgan "has contacted an engineer to get a second opinion" on the chicken houses. (*See* doc. 11-3, p. 11).

The Morgans, however, dispute this version of events. According to Mr. Morgan's affidavit, he "did not hire an engineer between October 31, 2024, and November 15, 2024," and he "had not made a decision between those dates to hire an engineer." (*See* doc. 9-1, p. 4). Mr. Morgan supports his affidavit with a second Facebook post he made on November 18—*i.e.*, three days after Whitlock made the alleged promise:



(Doc. 9-1, p. 8).

Having reviewed both sides' submissions, the court finds that the parties genuinely dispute whether the Morgans took a different course of action because of Whitlock's alleged November 15th statement. The court must resolve all doubts in favor of remand, so the court finds that the Morgans' claims could survive a Rule 12 or Rule 56 motion on this ground in state court.

## B.    Detrimental Reliance

Country Mutual next argues that, even if the Morgans changed their course of conduct based on Whitlock's representation, they did not do so to their detriment. That is so, according to Country Mutual, because Hodges' report *supports* the Morgans' contention that Country Mutual breached the Policy and acted in bad faith.

This argument likewise fails. While it's true that Hodges' report may ultimately support the Morgans' claims against Country Mutual, that doesn't change the fact that the Morgans spent $400 they might not have spent had Whitlock not represented that Country Mutual would revise its offer if an engineer confirmed the CAGC and Kamo estimates. After all, that's what the Morgans pleaded, and this court must view the facts in the light most favorable to the Morgans. So the court finds that the Morgans' claims could survive a Rule 12 or Rule 56 motion on this ground in state court.

—

In short, the court lacks jurisdiction because the parties are not completely diverse. And the court regrets that this issue cost the parties 11 months, particularly the Morgans, who did not choose this forum.

This case provides another example of why I believe the Eleventh Circuit needs to reconsider how district courts handle removals supported by claims of "fraudulent joinder." *See supra* note 2. As you can see, before this court could declare the Morgans had done nothing "fraudulent," the court had to perform a merits analysis on two elements of a purely state-law claim over which it had no jurisdiction—relying solely on affidavits, claim log notes, cell phone records, and screenshots from Facebook. Just

as bad, Whitlock (who has the same attorney as Country Mutual) tried to use fraudulent joinder to side-step the State's three-part test for setting aside a state court's order of default judgment. *See Manci v. Ball, Koons & Watson*, 995 So. 2d 161, 165 (Ala. 2008) ("The trial court must then apply a three-factor analysis first established in *Ex parte Illinois Central Gulf R.R.*, 514 So.2d 1283 (Ala.1987), in deciding whether to deny a motion to set aside a default judgment. The broad discretionary authority given to the trial court in making that decision should not be exercised without considering the following factors: 1) whether the defendant has a meritorious defense; 2) whether the plaintiff will be unfairly prejudiced if the default judgment is set aside; and 3) whether the default judgment was a result of the defendant's own culpable conduct.") (cleaned up).

Thankfully, I'm not the only one who's noticed the trend. Justice Thomas recently said this about the fraudulent joinder precedent of several circuits, including the Eleventh:

> But this Court's precedents do not support the lower courts' more recent approach. As I read them, this Court's 'fraudulent joinder' precedents concerned only whether the plaintiff avoided federal diversity jurisdiction by bad faith or actual fraud—such as lying about a party's conduct or citizenship. *See Alabama Great Southern R. Co.*, 200 U.S. at 218, 26 S.Ct. 161 (asking whether the plaintiff "attempt[ed] to commit a fraud upon the jurisdiction of the Federal courts"); *Illinois Central R. Co. v. Sheegog*, 215 U.S. 308, 316, 30 S.Ct. 101, 54 L.Ed. 208 (1909) (asking whether a claim was 'fraudulent and false'); *Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183, 190, 52 S.Ct. 84, 76 L.Ed. 233 (1931) (asking whether the plaintiff committed 'actual fraud'). These precedents were limited to cases of 'extreme abuse.' *Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, 790 F.Supp.2d 590, 596 (ED Ky. 2011) (Thapar, J.). Unlike the lower courts' more recent decisions, they did not appear to turn on the strength of the claims on the merits.

9

> Federal courts sitting in diversity likely cannot dismiss nondiverse parties based on their view of the merits of the claims against those parties. Doing so appears unfaithful to Congress's limits on our diversity jurisdiction and inconsistent with this Court's precedents. As Judge Thapar has put it, the improper-joinder doctrine 'requires federal courts to exercise jurisdiction where none exists over questions of state law that the state courts are better suited to address themselves.' *Id.*, at 597. In a future case where the issue is briefed and squarely presented, this Court should consider the propriety of the improper-joinder doctrine.

*Hain Celestial Group, Inc. v. Palmquist*, 607 U.S. 421, 437 (2026) (Thomas, J. concurring). Until that day comes, the court will continue to apply the Circuit's precedent as it must.

## CONCLUSION

For these reasons, the court lacks subject matter jurisdiction and thus **GRANTS** the Morgans' motion to remand (doc. 9) and **REMANDS** this case to the Circuit Court of Marshall County. Given this ruling, the court **TERMINATES** Whitlock's motion to set aside default (docs. 4, 6) and motion to dismiss (docs. 5, 7) **AS MOOT**. The court will enter a separate order carrying out its ruling.

**DONE** and **ORDERED** on August 12, 2026.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE

10